Filed 6/12/14  P. v. Homme CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARL DAVID HOMME,<br><br>    Defendant and Appellant. | 2d Crim. No. B247432<br>(Super. Ct. No. NA091299)<br>(Los Angeles County) |

Carl David Homme appeals the judgment entered after he was convicted by a jury of inflicting corporal injury on a cohabitant, Kim R. (Kim) in violation of Penal Code section 273.5, subdivision (a) (count 1)[1]; battery of Winter H. (Winter) in violation of section 242 (count 3); and disobeying a domestic violence restraining order in violation of section 273.6, subdivision (a) (count 5).  Appellant was also convicted of the lesser included offense of dependent adult abuse of Kim in violation of section 368, subdivision (b)(1) (count 2).  Count 4, a charge of operating a vessel while having a blood alcohol level of .08 or higher, was dismissed by the court.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

Appellant was placed on formal probation for three years under specified conditions. The court agreed to reduce count 1 to a misdemeanor if Appellant successfully completed a 52-week Batters Treatment Program.

Appellant contends (1) the court erred in admitting a portion of a videotape of two breath tests to measure his blood alcohol level; and (2) the court erred in refusing to give a modified version of CALCRIM No. 226 that advised the jury it could consider "cognitive and medical mental disabilities" in assessing the credibility of witnesses. He also alleges cumulative error. We affirm.

*Factual History*

Appellant and Kim had known one another about four years. Appellant and Winter were Kim's caretakers, assisting Kim with symptoms of multiple sclerosis (MS). Kim owned a boat named *Serenity*.

On February 2, 2012, Appellant, Kim and Winter sailed *Serenity* to Twin Harbors at Santa Catalina Island. On the morning of February 4, 2012, Appellant drank several beers, most of a bottle of champagne and some vodka. In the afternoon, the trio decided to move the vessel to White's Cove to do some fishing. After Appellant and Winter detached the vessel from the buoys, Winter went into the cabin to rest and Kim took charge of *Serenity* because she believed Appellant was too drunk to sail her safely.

After the vessel was underway, Appellant came to the helm and forcibly took over control of the boat. He was very drunk and unsteady on his feet. Instead of heading toward White's Cove, Appellant steered it toward Bird Rock - a dangerous boating hazard. Kim tried to retake control of the boat but Appellant refused to turn it over to her. He struck Kim with a closed fist, kicked her and stomped on her feet. The attack left visible marks and bruises on her arms, hands, shoulders, legs and feet.

As the vessel headed toward the rocks, Kim screamed. Winter ran to the deck and saw Appellant attacking Kim. Winter called 911 to report the emergency and pressed a power button that stopped *Serenity's* engine. Appellant then attacked Winter.

Law enforcement responded to Winter's call. Deputies boarded *Serenity* and found Appellant at the helm. His speech was slurred, his eyes were bloodshot, he

2

appeared to the deputies to have trouble maintaining his balance and there was a strong odor of alcohol about him. Appellant was arrested and when deputies tried to handcuff Appellant he became very belligerent and threatened to kill the deputy. Deputies elected not to demand field sobriety tests because of Appellant's condition and demeanor.

*Serenity* was returned to Two Harbors and Appellant was transported to jail. Because he was verbally combative and hostile, breath tests to measure his blood alcohol level were deferred until 7:47 p.m. The tests showed his blood alcohol level was .20 and .21 percent. Deputies videotaped the administration of the breath tests.

The prosecutor offered the videotape to show Appellant's demeanor and the effects of his intoxication to prove count 4. Appellant objected to the introduction of the tape on the grounds that it was irrelevant, or that even if it were marginally relevant, should be excluded because its probative value was outweighed by its prejudicial effect. Appellant also argued that admitting the tape violated his Fifth and Sixth Amendment rights and constituted inadmissible character evidence. The trial court sustained Appellant's Evidence Code section 352 objection to all but the first 13 minutes, 59 seconds of the 29-minute videotape.

To undermine Kim's credibility Appellant proved she is legally blind in one eye, wears a hearing aid and take medications for MS that affect her cognition. A neurologist testified about the nature of MS and said that cognitive and memory problems are commonly associated with the disease. The neurologist said it would be unwise for a person with Kim's symptoms and medication to drink alcohol or to take control of a vessel like *Serenity*.

The jury instructions requested by the People and Appellant included CALCRIM No. 226, which assists the jury in its evaluation of the testimony of witnesses. The instruction lists eight factors the jury may consider in addition to anything else "that reasonably tends to prove or disprove the truth or accuracy of that testimony." Appellant proposed the addition of a ninth factor; viz., the "cognitive and medical mental disability" of a witness. The trial court rejected Appellant's proposed addition.

3

The first of the factors listed in CALCRIM No. 226 is: "How well could the witness see, hear, or otherwise perceive the things about which the witness testified?" The second is: "How well was the witness able to remember and describe what happened?" The fourth is: "Did the witness understand the questions and answer them directly?"

*Analysis*

*Videotape Evidence*

Appellant contends the court erred in admitting the videotape of the administration of the breathalyzer tests because his demeanor and the level of his intoxication were not relevant to the boating under the influence charge or any of the domestic violence charges. Alternatively, Appellant contends the probative value of the evidence was outweighed by its prejudicial effect. Appellant contends that admitting a portion of the tape was "akin to allowing the jury to view evidence of a 'character trait' of Appellant from which the jury could have concluded that Appellant was a bad person, which is [not] allowable under Evidence Code section 1101." We conclude that the videotape was properly admitted.

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210; *People v. Carter* (2005) 36 Cal.4th 1114, 1166.) A statutory exception to the admission of relevant evidence is found in Evidence Code section 352, which gives the court the power to exclude evidence if its prejudicial effect outweighs its relevance. "For this purpose, 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that '"uniquely tends to evoke an emotional bias against defendant"' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) The type of prejudice Evidence Code section 352 is intended to avoid is the tendency to prejudge a person on the basis of extraneous factors, such as evidence that evokes an emotional bias against the defendant without regard to its relevance to material issues. (*Kipp*, at p. 1122.)

4

We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Ibarra* (2007) 151 Cal.App.4th 1145, 1150.) Here, the court did not abuse its discretion in admitting the videotape. The breathalyzer results and the videotape showed Appellant was still intoxicated four hours after his arrest. The recorded words and conduct of Appellant tend to confirm the accuracy of the results of the breath tests and support the inference he was even more intoxicated when he was arrested. The videotape supports the Deputy Sheriff's explanation about why the field sobriety tests were skipped and why the breath test to determine his blood alcohol level was delayed.

Moreover, Appellant's defense to the domestic violence charges centered on his contention that Kim was motivated not to tell the truth about Appellant and that her memory about the events of that day was impaired by her disabilities, MS and the medication she was required to take. The results of the breath tests and the videotape confirm the testimony of Kim, Winter and law enforcement officers that Appellant was very intoxicated and belligerent when he was arrested and support a further reasonable inference that Appellant's memory of what took place that day was likely not as clear as the recollections of his sober victims and disinterested law enforcement officers.

Finally, the videotape shows that when the breath tests were administered Appellant's thought and speech were disorganized and rambling. But the segment of the tape played for the jury did not show Appellant being belligerent or violent. Thus the tape portrays Appellant more favorably than does the testimony of the officers who arrested him. The videotape evidence cannot be said to have been unduly prejudicial.

*Instructional Error*

Appellant contends it was error to refuse to instruct the jury that the cognitive or medical mental disability of a witness should be considered in assessing the credibility of the testimony of the witness. We disagree.

"Under appropriate circumstances, 'a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case . . . .'" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99.) However, a trial court need not give a pinpoint instruction that duplicates other instructions. (*Ibid.*) The court may also

5

properly refuse proffered instructions that are not supported by substantial evidence or that highlight specific evidence or testimony. (*People v. Bolden* (2002) 29 Cal.4th 515, 558.)

That is the case here. The modification requested by Appellant focuses exclusively on Kim and suggests the jury should doubt her credibility just because she has MS. No evidence in the appellate record points to specific flaws in Kim's memory other than the disagreements Appellant has with the testimony of two sober persons. Finally, the suggested addition to the instruction was adequately covered by the preamble to the instruction and the three specific factors listed in the body of CALCRIM No. 226.

*Cumulative Error*

Appellant argues that the cumulative effect of the preceding errors combined to deprive him of a fair trial. Because we reject both assignments of error, the claim necessarily fails. (*People v. Avila* (2006) 38 Cal.4th 491, 608.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


BURKE, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Laura F. Priver, Judge

Superior Court County of Los Angeles
_____

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.